# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONALD K. WILEY and ) | |
| RONALD K. WILEY, JR. ) | |
|     Plaintiffs, ) | Case No. 15-cv-11068 |
| ) | |
|     v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| URBAN PARTNERSHIP BANK, *et al.*, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this federal action, alleging multiple state and federal claims against Defendants stemming from a foreclosure action in the Chancery Court of the Circuit Court of Cook County. Before the Court is Defendants' motion to dismiss [14] Plaintiffs' complaint. For the reasons set forth below, Defendants' motion [14] is granted. Plaintiffs' complaint is dismissed without prejudice. Plaintiffs are given until September 9, 2016 to file an amended complaint if, after reading this order, they believe that they can state a claim upon which relief can be granted that properly invokes this Court's jurisdiction. If Plaintiffs do not file an amended complaint on or before September 9, 2016, this dismissal will convert to a dismissal with prejudice. To the extent that Defendants' motion [14] can be construed as containing a separate motion to dismiss for want of prosecution, that motion is stricken as moot in light of this order.

## I.     Background[1]

Plaintiffs have brought this federal action objecting to the outcome of a commercial foreclosure proceeding in the Chancery Division of the Cook County Circuit Court, Case No. 12 CH 35004. On September 17, 2012, Defendant Urban Partnership Bank filed a foreclosure

---

[1] The Court accepts as true the facts alleged in Plaintiffs' complaint and makes all reasonable inferences in their favor. See *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

complaint against Plaintiffs relating to a property located at 9946–9950 S. Western Avenue in Chicago, Illinois. The foreclosure case was based on Plaintiffs' breach of a promissory note dated November 6, 2007, in the amount of $502,000.00, which was secured by a commercial mortgage on the subject property. The Cook County Circuit Court ultimately granted summary judgment against Plaintiffs and the property was sold to a third party in a judicial sale. On June 24, 2015, following the sale of the property, the Cook County Circuit Court granted a deficiency judgment against Plaintiffs in the amount of $422,654.89. Plaintiffs filed a motion to vacate the order approving the sale of the property, but on August 31, 2015 the state court struck the motion, stating that "this court hereby lacks jurisdiction to hear any further motions filed by defendant in this matter." [14-5, at 2.] Approximately three months later, Plaintiffs filed this federal lawsuit [1], seeking damages "resulting from breach of contract and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("IFCA"), Federal Deposit Insurance Corporation (FDIC) and the Real Estate Settlement Procedures Act ("RESPA") Finance National Housing Act, Fair Credit Reporting, Wire Fraud and 14th Amendment of the United States Constitution." [1, at 1.]

Defendants filed a motion to dismiss Plaintiffs' complaint on February 11, 2016. Plaintiffs' response was due April 14, 2016, but the Court granted Plaintiffs an extension of time, extending the due date to May 16, 2016. On May 16, Plaintiffs filed motions for attorney representation, which the Court subsequently denied because Plaintiffs do not meet the threshold requirement of indigency. [See 29.] But the Court, *sua sponte*, extended Plaintiffs' deadline to respond to Defendants' motion to dismiss to June 24, 2016. To date, Plaintiffs have not responded to Defendants' motion.

## II. Legal Standard

In reviewing the sufficiency of a complaint, a district court must accept all well-plead facts as true and draw all permissible inferences in favor of the plaintiff. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). The Federal Rules of Civil Procedure require only that a complaint provide the defendant with "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Supreme Court has described this notice-pleading standard as requiring a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While factual allegations must be accepted as true, legal conclusions may not be considered. *Id*.

## III. Analysis

### A. *Rooker–Feldman* Doctrine

Pursuant to the *"Rooker–Feldman* doctrine," which takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), lower federal courts such as this one do not have the authority to hear cases "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). "[N]o matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Remer v. Burlington Area Sch. Dist.,* 205 F.3d 990, 996 (7th Cir. 2000). Further, the Seventh Circuit has clarified that "'[w]hile the *Rooker–Feldman* doctrine bars federal subject matter

jurisdiction over issues raised in state court, and those inextricably intertwined with such issues, 'an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.'" *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 534–35 (7th Cir. 2004) (quoting *A.D. Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002)). Here, to the extent that Plaintiffs' claims call into question the judgment in the forfeiture proceeding, or raise issues inextricably intertwined with that proceeding that could have been raised during that proceeding, they are barred by *Rooker–Feldman*. If Plaintiffs wish to seek revision or reversal of orders issued by the Cook County Chancery Court, they must seek relief from the Illinois Appellate Court.

The application of the *Rooker–Feldman* doctrine in this case is apparent from the face of Plaintiffs' complaint, where they allege that "[a]ll of the claims stated herein stem from the wrongful servicing, debt collection, and loss mitigation activities related to the WILEY'S alleged mortgage loan, *and the ensuing wrongful foreclosure actions filed against Wiley in 2012*." [1, at 1 (emphasis added).] By Plaintiffs' own admission, they are attempting to use their federal lawsuit to object to the foreclosure action in the state court. On this basis alone, Plaintiffs' complaint must be dismissed.

Regarding the scope of this jurisdictional bar, the Seventh Circuit recently clarified that the relevant inquiry in deciding whether a claim is barred by *Rooker–Feldman* is whether the "plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair." *Iqbal v. Patel*, 780 F.3d 728, 729–30 (7th Cir. 2015). In that instance, "a district court has jurisdiction—but only to the extent of dealing with that injury." *Id.* Arguably, if one were to ignore Plaintiffs' admission that "all of the claims" in their complaint stem from the foreclosure action, it is plausible that the alleged "wrongful servicing, debt collection, and loss

4

mitigation activities related to the WILEY'S alleged mortgage loan" were out-of-court events that caused injury that the Chancery Court failed to detect and repair. That being said, because these claims are inextricably intertwined with the foreclosure action (all but one part of Plaintiffs' RESPA claim, as discussed below), and because Plaintiffs had the opportunity to raise these claims in foreclosure action (which they may or may not have done), the *Rooker–Feldman* doctrine still applies. Nonetheless, the Court will address Defendants' arguments seeking to dismiss each of Plaintiffs' individual claims for failure to state a claim. See Fed. R. Civ. P. 12(b)(6).

B. **Exhaustion of Administrative Remedies**

Before moving to Defendants' 12(b)(6) arguments, the Court addresses another jurisdictional argument that Defendants raised in their motion to dismiss. Specifically, Defendants argue that because all of Plaintiffs' claims stem from actions by the now-defunct ShoreBank, Plaintiffs cannot pursue such claims in federal court without first exhausting the administrative remedies of ShoreBank's receiver, the FDIC. By way of background, the Illinois Department of Financial and Professional Regulation, Division of Banking, closed ShoreBank in 2010 due to insolvency, and the FDIC was appointed as ShoreBank's receiver. Following this transaction, Defendant Urban Partnership Bank purchased certain promissory notes from the FDIC as receiver for ShoreBank, including the Plaintiffs' promissory note for the property in question. Defendants argue that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") requires any party wishing to pursue a claim against a failed institution or its assets to present that claim to the receiver. Where the receiver is the FDIC, that means exhausting the FDIC's administrative remedies before presenting the claim in federal court:

> The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, contains a general jurisdiction-

> stripping provision barring courts from reviewing claims seeking payment from, or a determination of rights to, the assets of failed banks for which the FDIC has been appointed receiver. 12 U.S.C. § 1821(d)(13)(D). A limited exception permits judicial review of claims disallowed by the FDIC, but only if the claimant files suit within 60 days of the date the FDIC issues its notice of disallowance. *Id.* § 1821(d)(6)(A)(ii).

*Miller v. FDIC*, 738 F.3d 836, 838 (7th Cir. 2013); see also *Farnik v. FDIC*, 707 F.3d 717, 722 (7th Cir. 2013) ("Courts lack authority to review FIRREA claims 'relating to any act or omission' of a failed bank or of the FDIC as receiver of a failed bank unless they are first subjected to FIRREA's administrative claims process." (quoting 12 U.S.C. § 1821(d)(13)(D)(ii))).

Nearly all of Plaintiffs' claims relate to the pre-receivership acts or omissions of a failed bank for which the FDIC is the receiver (*i.e.*, ShoreBank), and there is no indication that Plaintiffs have submitted any of their claims to the FDIC as required by FIRREA. Accordingly, this Court lacks subject matter jurisdiction to hear these claims. See, *e.g.*, *Latz v. Resolution Trust Corp.*, 1992 WL 97931, at *1–2 (N.D. Ill. May 5, 1992) (dismissing breach of contract claim against a failed bank for lack of subject matter jurisdiction where plaintiff failed to exhaust the administrative procedures set forth in FIRREA); *Butler v. FDIC*, 2014 WL 843605, at *3 (N.D. Ill. Feb. 28, 2014) (granting sanctions against a plaintiff for pursuing claims that clearly were barred by FIRREA); *FDIC v. OneBeacon Midwest Ins. Co.*, 883 F. Supp. 2d 754, at 766–67 (N.D. Ill. 2012); *Ravenswood, LLC v. FDIC*, 2010 WL 4877557, at *3–4 (N.D. Ill. Nov. 23, 2010); *FDIC v. Spangler*, 2012 WL 5558941, at *6 (N.D. Ill. Nov. 15, 2012).

There are two nuances to this argument that require clarification. First, while FIRREA's exhaustion requirement clearly strips this Court of jurisdiction to hear claims against the failed bank (ShoreBank) and its receiver (FDIC), the question is whether FIRREA also bars claims against Urban Partnership Bank regarding the pre-receivership acts or omissions of ShoreBank.

The Illinois Appellate Court, addressing this as an issue of first impression, said yes. See *Perik v. JPMorgan Chase Bank, N.A.*, 34 N.E.3d 641, 648 (Ill. App. Ct. 2015). The *Perik* court focused on the language of the statute that bars judicial review of "any *claim* relating to any act or omission" of a failed bank, see 12 U.S.C. § 1821(d)(13)(D)(ii) (emphasis added), holding that "the trial court's only recourse when presented with an action on the claim [relating to the pre-receivership acts of the failed bank] would be to dismiss the action for lack of jurisdiction." *Perik*, 34 N.E.3d at 648. The Court agrees. Of course, Defendant Urban Partnership Bank denies that it assumed any of ShoreBank's liabilities in the first place, but the assessment of that argument would require an examination of the contractual documents surrounding its purchase of the promissory note in question. But even if Urban Partnership Bank did assume ShoreBank's pre-receivership liabilities, any "claims" against Urban Partnership Bank stemming from the pre-receivership acts or omissions of ShoreBank still would be subject to FIRREA's exhaustion requirement, and Plaintiffs' failure to exhaust their administrative remedies leaves the Court without jurisdiction to hear these claims.

The second nuance concerns the need to delineate which of Plaintiffs' claims relate to the pre-receivership acts or omissions of ShoreBank and which claims relate to post-receivership acts or omissions of Defendant Urban Partnership Bank. To review the relevant timeline, Plaintiffs refinanced their loan in December 2003 and then again on November 6, 2007, ShoreBank closed in August 20, 2010, and Urban Partnership Bank foreclosed on the 2007 note on September 17, 2012. Without explanation, Defendants argue that *all* of Plaintiffs' allegations are based on actions of a failed bank. With one exception, the Court agrees. At the outset of their complaint, Plaintiffs admit that their "complaint is based on [the actions of] ShoreBank," [1, ¶ 15], and indeed the allegations in the complaint relate almost exclusively to pre-receivership

7

acts of ShoreBank (*i.e.*, acts from 2003 and 2007). However, Plaintiffs clearly allege that Defendant Urban Partnership Bank violated the Real Estate Settlement Procedures Act's "Requests for Information" provision, 12 C.F.R. 1024.36, by failing to respond to Plaintiff's August 25, 2015 written request for a true copy of the Promissory Note. [1, ¶¶ 28, 34.] Other than this RESPA claim, Plaintiffs' remaining claims against Defendant Urban Partnership Bank relate to the pre-receivership acts or omissions of ShoreBank and thus this Court lacks jurisdiction to hear those claims.

        C.      **Failure to State a Claim**

In addition to the aforementioned jurisdictional bars to Plaintiffs' claims, the Court also addresses Defendants' arguments that Plaintiffs have failed to state any claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

        1.      **Fair Debt Collection Practices Act and Real Estate Settlement Procedures Act**

Although not entirely clear, Plaintiffs appear to allege that some or all of the Defendants violated the FDCPA and RESPA by deceiving Plaintiffs, as "unsophisticated consumers," regarding the formation of a land trust. [1, ¶ 21.] Plaintiffs also allege that Defendant Urban Partnership Bank violated RESPA by railing to respond to an August 25, 2015 written request for a true copy of their promissory note. [1, ¶ 28.]

"At its core, 'RESPA is an anti-kickback statute.' Its purpose is to 'prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' furnished for the referral of real estate settlement business." *Durr v. Intercounty Title Co. of Ill.*, 14 F.3d 1183 (7th Cir. 1994) (quoting *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 270–71 (7th Cir. 1985)). RESPA also contains an elaborate set of rules for the servicing of mortgage loans. See 12 U.S.C. § 2605. Plaintiffs' primary RESPA argument is that Defendants failed to inform Plaintiffs

8

that, in Illinois, a land trust is created only upon request of the borrower. [1, ¶ 21.] It is unclear whether Plaintiffs are alleging that they were unaware that a land trust was created, or that the land trust was created without their consent. Either way, Plaintiffs have failed to allege sufficient facts to tie this claim to any provisions of RESPA. It is not enough to invoke the RESPA statute in connection with a gripe or misunderstanding about a mortgage—a plaintiff must provide sufficient factual allegations to give the defendants notice as to what the claim is and the grounds upon which it rests. *Erickson*, 551 U.S. at 93. Plaintiffs have failed to do that here, and thus their primary RESPA claim must be dismissed.

Plaintiffs' FDCPA claim suffers the same fate. According to the FDCPA, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiffs fail to allege any facts regarding the collection of debt, let alone any false, deceptive, or misleading representations made pursuant to any such collection. This is insufficient to state a claim.

Plaintiffs also allege that Defendant Urban Partnership Bank violated RESPA by failing to respond to Plaintiffs' request for a copy of the promissory note. The Seventh Circuit has explained the "Requests for Information" provision of RESPA in detail:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond. See 12 U.S.C. § 2605(e)(1)(A), (e)(2), and (e)(3); see also *Garcia v. Wachovia Mortgage Corp.*,

9

> 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (when construed in light most favorable to borrower, letter was a qualified written request even though it did not contain a statement of reasons for borrower's belief of error; letter provided sufficient detail regarding "other information" being sought); *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156, 1162 (M.D. Ala. 1999) (plaintiffs' claims survived summary judgment where court found that descriptions of payments made to a prior servicer sufficiently stated plaintiffs' reasons for their belief that their account was in error and were qualified written requests).

*Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011). Defendant Urban Partnership Bank argues that this claim should be dismissed because Plaintiffs "fail[ed] to provide any evidence of submitting a qualified written request." [14, at 8.] But Plaintiffs need not provide evidentiary proof of the written request at the motion to dismiss stage. Any such requirement would be contrary to the federal pleading standard, which only requires that Plaintiff provide sufficient *factual allegations* to state a claim, and here Plaintiffs clearly allege that they sent a request for a true copy of their promissory note on August 25, 2015, and that Defendant Urban Partnership Bank failed to respond to this request as required by RESPA.

However, Plaintiffs' RESPA claim fails for another reason: Plaintiffs have failed to allege damages. The RESPA statute says that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: In the case of any action by an individual, an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f). Plaintiffs have not alleged any actual damages here, nor have they alleged any pattern or practice of noncompliance that might trigger damages under § 2065(f)(1)(B). See, *e.g.*, *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 945–46 (N.D. Ill. 2005) (plaintiff failed to state a claim under RESPA as a matter of law by failing to adequately allege damages); see also *Ricotta v. Ocwen Loan Servicing, LLC*, 2008 WL

516674, at *5 (D. Colo. Feb. 22, 2008) ("In the absence of authority to the contrary, the Court finds that a RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation."); *Bajwa v. John Adams Mortg. Co.*, 2011 WL 6009266, at *5 (E.D. Mich. Nov. 30, 2011) ("A claim under RESPA is properly dismissed for failure to allege actual damages resulting from failure to respond to qualified written request."); *McWilliams v. Chase Home Fin., LLC*, 2010 WL 1817783, at *4 (E.D. Mo. May 4, 2010) ("[A] plaintiff who alleges a breach of § 2605 without alleging damages fails to state a cause of action."); *Oden v. JPMorgan Chase Bank, N.A.*, 2012 WL 1610782, at *2 (S.D. Tex. May 8, 2012) ("The borrower must show that actual damage resulted from an alleged violation of § 2605(e) in order to pursue a private cause of action under RESPA."). Accordingly, Plaintiffs' RESPA claim alleging a violation of § 2605(e) must be dismissed.

### 2. Finance National Housing Act and Fair Housing Act

Plaintiffs briefly mention the Finance National Housing Act (assumedly referring to the National Housing Act of 1934),[2] the Fair Housing Act, and the Fair Housing Amendments Act. In discussing these statutory violations, Plaintiffs allege, in conclusory fashion, that "[t]he FHA empowers this Court to grant legal or equitable relief," and that Defendants' conduct violates "Section 812(o) of the Fair Housing Act." [1, at 11.]

The sole statutory provision cited by Plaintiffs—section 812(o) of the Fair Housing Act, 42 U.S.C. § 3612(o)—describes the procedure by which the United States brings a civil action on behalf of an aggrieved party, and thus is inapplicable here. But in general, the Fair Housing Act prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because

---

[2] The National Housing Act, 12 U.S.C. § 1701 *et seq.*, does not create a private right of action. See 12 U.S.C. § 1702.

11

of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Act also makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

To survive a motion to dismiss, a Fair Housing Act claim must allege discrimination related to the terms, conditions, privileges, or provisions of services of a dwelling. See *Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 616 (7th Cir. 2011); *Bloch v. Frischolz*, 587 F.3d 771, 776 (7th Cir. 2009) (en banc). A claim also must plead the type of discrimination that occurred, by whom, and when. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011); *Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2010). Plaintiffs' Fair Housing Act claim fails on all fronts. Plaintiffs have failed to allege the type of discrimination, when it occurred, or the offending party or parties. Therefore, Plaintiffs' FHA claim must be dismissed.

Similarly, Plaintiffs have failed to articulate any viable claims under the Fair Housing Amendments Act, which forbids discrimination against handicapped people in the sale or rental of housing, and requires such "reasonable accommodations in rules, policies, practices, or services" as may be "necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." §§ 3604(f)(1), (3)(B). Again, Plaintiffs have failed to allege any qualifying acts of discrimination under these provisions, and thus may not proceed on their claim under the FHAA.

### 3. Equal Credit Opportunity Act

In their prayer for relief, Plaintiffs allege that Defendants' actions violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 3601–3619. The ECOA makes it illegal for creditors to discriminate "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1); see also *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011). Because Plaintiffs have failed to allege any discriminatory acts these qualifying bases, Plaintiffs may not proceed with their ECOA claim, and this claim is dismissed.

### 4. Fair Credit Reporting Act

Plaintiffs reference "Fair Credit Reporting" (assumedly referencing the Fair Credit Reporting Act), at the outset of their complaint [1, at 1], but make no further mention of that statute throughout their complaint. The FCRA relates to the duties of those who furnish credit information to consumer reporting agencies. See 15 U.S.C. § 1681. Plaintiffs do not allege any facts regarding the reporting of information to consumer reporting agencies, nor do they allege how any such actions violated the FCRA. Plaintiffs' FCRA claim therefore must be dismissed.

### 5. Wire Fraud

Plaintiffs reference "wire fraud" at the outset of their complaint [1, at 1], but do not make any further allegations regarding that claim. Regardless, there is no private right of action for wire fraud. See, *e.g.*, *Malkoc v. Dorner*, 2011 WL 196927, at *2 (N.D. Ill. Jan. 20, 2011); *Simkus v. United Air Lines, Inc.*, 2012 WL 3133603, at *2 (N.D. Ill. July 31, 2012). Thus, Plaintiffs' wire fraud claim must be dismissed.

### 6. Fourteenth Amendment, Ku Klux Klan Act, and Civil Rights Act

Plaintiffs make passing references to violations of the Due Process Clause of the Fourteenth Amendment, the Ku Klux Klan Act of 1871, and the Civil Rights Act of 1968, but

fail to make any factual allegations as to how any or all of the Defendants violated these provisions. These allegations are insufficient to give Defendants fair notice of what the claims are and the grounds upon which they rest, and therefore must be dismissed. See *Erickson*, 551 U.S. at 93.

### 7. State Law Claims

Plaintiffs raise two claims under Illinois law: (1) a violation under the Illinois Consumer Fraud and Deceptive Practices Act, and (2) a breach of contract claim. Pursuant to 28 U.S.C. § 1367, where a district court has original jurisdiction over an action, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are part of the same case or controversy if they "derive from a common nucleus of operative facts," where "[a] loose factual connection between the claims is generally sufficient." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quotation omitted). The decision of whether to exercise supplemental jurisdiction is within the discretion of the Court. See *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) ("[A court] may decline to exercise supplemental jurisdiction in certain situations, see § 1367(c); that decision is squarely within its discretion * * *.").

Here, the only surviving federal claim relates to Defendant Urban Partnership Bank's failure to respond to a written request for information in August 2015. This claim shares no factual connection with Plaintiffs' state law claims—which relate to fraudulent actions that allegedly occurred in 2003 and 2007—and thus the Court declines to exercise supplemental jurisdiction over those claims. Regardless, as explained above, this Court lacks jurisdiction to hear these claims because of (a) the *Rooker–Feldman* doctrine and (b) Plaintiffs' failure to

exhaust their administrative remedies with the FDIC. That being said, to foreclose any doubt regarding the viability of these claims, the Court also will address Defendants' arguments that Plaintiffs have failed to state claims upon which relief can be granted.

### a. Illinois Consumer Fraud and Deceptive Business Practices Act

Plaintiffs allege that Defendants violated the Illinois Consumer Fraud Act by "wrongfully, deliberately and intentionally deny[ing] Plaintiff[s] a legal affordable [loan] modification," and "[f]or violations under Predatory Lending." [1, ¶ 36.] To state a claim under this Act, a plaintiff must allege that (1) the defendant engaged in a deceptive or unfair practice, (2) the defendant intended for the plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception. *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 603 (Ill. App. Ct. 2009).

Plaintiffs only allegations relating to fraud are that, in 2007, Plaintiff signed refinancing documents "unaware of the true nature of what these documents really meant. In other words he was signing blindly." [1, ¶ 26.] But the fact that Plaintiffs were unaware of the specifics of their loan modification does not equate to a claim of fraud. Plaintiffs have failed to identify any deceptive or unfair business practice, which is fatal to their claim. See, *e.g.*, *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (a plaintiff cannot maintain an action under the ICFA for a deceptive practice absent some communication from the defendant, either a communication containing a deceptive misrepresentation or a deceptive omission); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (to determine whether a practice is unfair under the ICFA, the court considers whether the practice offends public policy, whether it is immoral, unethical, oppressive, or unscrupulous, and whether it causes substantial injury to consumers).

Plaintiffs' professed ignorance as to the terms of their refinancing documents does not constitute fraudulent deception or an unfair practice under the Illinois statute.

At one point, Plaintiffs allege that ShoreBank's intention regarding Plaintiffs' 2003 refinancing was "to force the Plaintiff[s] into securing this loan based on the facts that in the near future the bank would be able to refinance under false pretense in order to deceive the Plaintiff." [1, ¶ 22.] While this allegation is closer to a viable claim of fraud (notably because of Plaintiffs' reference to an actual act of deception), it still lacks the requisite factual basis to put Defendants on notice of what the fraudulent act was. Accordingly, Plaintiffs have failed to state a claim of fraud upon which relief can be granted. Regardless, this claim—relating to ShoreBank's 2003 actions—is clearly one that is subject to FIRREA's exhaustion requirement, and Plaintiffs' failure to submit this claim to the FDIC's administrative review process in a timely manner strips this Court of jurisdiction to hear the claim.

### b. Breach of Contract

The substance of Plaintiffs' breach of contract claim seems to be that Plaintiffs did not understand the terms of their 2003 and/or 2007 loan-modification documents, as discussed in the previous section regarding Plaintiffs' fraud claim. This is yet another square-peg-in-a-round-hole argument, where Plaintiffs have tried to shoehorn their dissatisfaction with the terms of their loan documents into an actionable claim. Plaintiffs' dissatisfaction stems from Defendants' *enforcement* of the loan documents, not any *breaching* of the terms of those documents. Plaintiffs do not allege any actual breaches, and thus their claim cannot stand. See, *e.g.*, *Van Der Molen v. Wash. Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) (To state a claim for breach of contract under Illinois law, a plaintiff must allege the following: "(1) the existence of a

valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.").

Once again, the Court notes that even if Plaintiffs had successfully articulated a breach of contract claim, this Court would still lack jurisdiction to hear that claim based on Plaintiffs' failure to submit this claim to the FDIC's administrative review process. Further, there is a strong likelihood that both of Plaintiffs' state law claims would be barred by the *Rooker–Feldman* doctrine, as the alleged harm in question is Defendants' enforcement of the financing agreements by way of the foreclosure action, and Plaintiffs had the opportunity to raise these claims in that proceeding. See, *e.g.*, *Calhoun v. CitiMortgage, Inc.*, 2014 WL 274122, at *4–5 (N.D. Ill. Jan. 24, 2014) (dismissing ICFA and breach of contract claims under *Rooker–Feldman* where the harm in question was the underlying foreclosure action, and the plaintiff could have raised these claims during the state court foreclosure proceedings); see also *Mumma v. Wells Fargo Home Mortg.*, 2013 WL 4761118, at *2–3 (S.D. Ill. Sept. 4, 2013) ("Where Plaintiff seeks money damages for violation of the state fraud statute, promissory estoppel, and fraudulent and negligent misrepresentation, the question is whether relief on those claims would contradict the state's judgment." (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005))); *Taylor v*, 374 F.3d at 534–35 ("'[W]hile the *Rooker–Feldman* doctrine bars federal subject matter jurisdiction over issues raised in state court, and those inextricably intertwined with such issues, 'an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.'" (quoting *A.D. Brokaw*, 305 F.3d at 668).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [14] is granted. Plaintiffs' complaint is dismissed without prejudice. Plaintiffs are given until September 9, 2016 to file an amended complaint if, after reading this order, they believe that they can state a claim upon which relief can be granted that properly invokes this Court's jurisdiction. If Plaintiffs do not file an amended complaint on or before September 9, 2016, this dismissal will convert to a dismissal with prejudice. To the extent that Defendants' motion [14] can be construed as containing a separate motion to dismiss for want of prosecution, that motion is stricken as moot in light of this order.

Date: July 27, 2016

Robert M. Dow, Jr.
United States District Judge